UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                           )    Case No. _____
                                                )
                                                )    NOTICE OF MOTION FOR
                                                )    RELIEF FROM AUTOMATIC
                                                )    STAY IN A CHAPTER 11/12 CASE,
Debtor(s)                                       )    AND OF HEARING THEREON

**YOU ARE NOTIFIED THAT**:

1.  A motion was filed by, _____, for the relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

2.  The name and address of the moving party's attorney (or moving party, if no attorney) are:

3.  If you wish to resist the motion you must, within 14 days of the service date shown below, file a written response with the Clerk of the Bankruptcy Court and, if served in paper, a certificate showing a copy of the response has been served on the moving party's attorney.

4.  Contents of Response. A response must state the facts upon which relief from the automatic stay is resisted. See Local Form #720.50 for details.

5.  **If you file a timely Response**:

    A Hearing on the motion will be held as follows:

    **Date:**_____        **Time:**_____

    **Location:**   G   Courtroom #_____ , _____

                    G   Telephone Hearing  [**NOTE**: See LBF #888, Telephone Hearing Requirements]
                        **Call In Number:**        (888) 684-8852
                        **Access Code:**           G 8622907 for Judge Frank R. Alley (fra)
                                                   G 4950985 for Judge Trish M. Brown (tmb)
                                                   G 5870400 for Judge Randall L. Dunn (rld)
                                                   G 1238244 for Judge Elizabeth L. Perris (elp)
                                                   G 3388495 for Judge Thomas M. Renn (tmr)
                                                   G Other_____

    NO TESTIMONY will be taken at the hearing.

6.  **If a timely response is not filed**, then either:

    a.   The court may sign an ex parte order, submitted by the moving party, granting relief from the stay;

or

    b.   The stay will expire under the terms of 11 USC §362(e) 30 days after the motion was filed.

            CLERK, U.S. BANKRUPTCY COURT
            (If filing in paper and if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave.
            #700, Portland OR 97204; or if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401)

I certify that on _____ copies of (1) this Notice, (2) Local Form #720.50 if this Notice was served on paper, (3) Local Form #888 if this Notice was served on paper and a Telephone Hearing will be held, and (4) the Motion, were served on the Debtor(s), U.S. Trustee, and on the following parties, if any: Trustee, Creditors' Committee Chairperson, and their respective attorneys.

_____
Signature of Moving Party or Attorney

1  Tara J. Schleicher, OSB #954021
   tschleicher@fwwlaw.com
2  Farleigh Wada Witt
   121 SW Morrison Street, Suite 600
3  Portland, Oregon 97204-3136
   Telephone: (503) 228-6044
4
        Attorneys for Dr. Roderich Bott
5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9                  FOR THE DISTRICT OF OREGON

10  In re                              Case No. 14-32565-tmb11

11  Dr. Bott, LLC,

12                         Debtor.      MOTION FOR RELIEF FROM STAY OF DR.
                                        RODERICH BOTT

13

14

15          Dr. Roderich Bott ("Bott") hereby moves this Court for entry of an order granting

16  him relief from the automatic stay under 11 U.S.C. § 362(d)(1) in order to continue proceedings

17  in a separate lawsuit to resolve LLC control issues that are of fundamental importance to this

18  involuntary bankruptcy case.  Specifically, Bott seeks entry of an order allowing him to pursue

19  his counterclaims against Debtor in the case of *Dr. Bott, LLC et. al. v. Dr. Roderich Bott,*

20  Multnomah County Circuit Court Case No. 1112-15996 (the "Litigation").  Bott seeks relief

21  from the automatic stay to litigate the pending summary judgment motion regarding control of

22  the LLC and the injunctive relief he seeks in the Litigation for expulsion of Eric W. Prentice

23  ("Prentice") as an LLC member.  Bott is not seeking to pursue assets of the proposed debtor in

24  this involuntary bankruptcy proceeding.  This motion is supported by the Declaration of Dr.

25  Roderich Bott ("Bott Dec."), the Declaration of Katherine R. Heekin ("Heekin Dec.") and the

26  following points and authorities:

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1      **<u>FACTS</u>**

2           Bott is an individual who is a citizen and a resident of the Federal Republic of

3   Germany.  Bott Dec., ¶ 1.  He is one of the two owners and members of an Oregon limited

4   liability company that was formed as Dr. Bott, LLC (the "LLC").  *Id.* at ¶ 2.  Bott owns 75% of

5   the membership shares of the LLC.  *Id.*  Eric W. Prentice ("Prentice") owns the remaining 25%

6   of the LLC's shares.  *Id.*

7           The LLC was formed by Bott and Prentice in April of 1999.  Bott Dec., ¶ 3.  The

8   LLC was in the business of, among other things, selling, and re-selling specialized Apple

9   compatible products to retailers, wholesalers and other customers.  *Id.*  Bott has learned that the

10  LLC recently stopped engaging in the ordinary course of its business.  *Id.*

11          Under the terms of the LLC's Operating Agreement, Prentice is the Operating

12  Manager responsible for conducting the "day-to-day Operations" of the LLC, but without

13  authority to make "major decisions."  Bott Dec., ¶ 4 and Exh. 1.  Rather, major decisions are not

14  to be made without the prior written approval or consent of a majority of the members.  *Id.*

15          In 2011, Bott learned of certain self-interested financial transactions taken by

16  Prentice that appeared to breach Prentice's fiduciary duties to the LLC as well as Prentice's

17  apparent gross mismanagement of the LLC's books and records.  Bott Dec., ¶ 5.  Those financial

18  transactions are detailed in Exhibit 2 to the Bott Dec., which is an excerpt from his counterclaims

19  against Prentice and derivative action on behalf of the LLC against Prentice in the Litigation.

20  *Id.*, Exh. 2.

21          On November 7, 2011, Bott's counsel sent a letter to the LLC's counsel at that

22  time demanding that the LLC take action against Prentice for breaches of his fiduciary duties as

23  the operations manager and tax manager of the LLC.  Declaration of Katherine R. Heekin

24  ("Heekin Dec."), ¶ 2.  In response, Prentice hired a different attorney to represent the LLC and

25  sued Bott to force a buy-out of his interest in the LLC.  *Id.*  That lawsuit brought by the LLC and

26  Prentice was filed in Multnomah County Circuit Court for the State of Oregon as, *Dr. Bott, LLC*

Page 2 of 6 -     MOTION FOR RELIEF FROM STAY OF DR. RODERICH BOTT
P:\DOCS\DRBOTT\07047\PLDG\3IL1702.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   *et. al. v. Dr. Roderich Bott,* Multnomah County Circuit Court Case No. 1112-15996 (the

2   "Litigation"). *Id.* During depositions in the Litigation, Prentice admitted that he came up with

3   the complaint against Bott after Bott had accused him of violating his fiduciary duties. Heekin

4   Dec., ¶ 3.

5           Ultimately, based upon Bott's Motion to Disqualify filed in the Litigation, the

6   LLC's lawyers at that time were disqualified from representing the LLC in the Litigation based

7   upon a breach of the lawyers' duties of loyalty to the LLC. Heekin Dec., ¶ 4. They were found

8   to have breached their duties of loyalty to the LLC because they entered into a joint interest

9   agreement with Prentice as an individual in pursuit of his defense of allegations against him

10   personally. *Id.*

11           There is a pending motion for summary judgment and a motion for preliminary

12   injunction in the Litigation that would resolve the control issues relating to the LLC. *Id.* at ¶ 5.

13   The parties submitted a proposed briefing schedule and request for hearing dates for the motions,

14   and were awaiting a response from the court regarding a hearing date when the involuntary

15   action was filed. *Id.*

16           Decisions regarding how to respond to an involuntary bankruptcy filing and the

17   actions to be taken during the bankruptcy proceeding by the debtor when it is no longer operating

18   are not "day-to-day operations" decisions; rather, they are "major decisions." *See e.g., In re*

19   *Loverin Ranch*, 492 B.R. 545, 548 (Bankr. D. Or. 2013) (discussing how the reorganization of a

20   debtor in chapter 11 "cannot, in good conscious, be viewed as an act…to carry on its business in

21   the usual way.") In the same way that filing a chapter 11 is outside the ordinary course of

22   business, determining how to respond to an involuntary chapter 11 filing is clearly a "major

23   decision" not a "day-to-day" operational decision. Therefore, the LLC should be taking

24   direction from the members, not just Prentice, during this process, but it is not. Instead, the LLC

25   is taking direction from Prentice.

26           These control issues need to be resolved in order for the LLC to effectively and

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    properly take any action in this bankruptcy proceeding.  They were on the cusp of being

2    determined in the Litigation by the state court judge when the involuntary proceeding was filed.

3                                                    **<u>ARGUMENT</u>**

4                   Under 11 U.S.C. § 362(a)(1), an automatic stay is imposed as of the petition date

5    and stays "the commencement or continuation…of a judicial, administrative, or other action or

6    proceeding against the debtor that was…commenced before the commencement of the case

7    under this title."  Section 362(d)(1) directs the court to grant relief from the automatic stay upon

8    a showing of "cause."  11 U.S.C. § 362(d)(1) ("The court shall grant relief from the stay. . .for

9    cause").  That is true even in the context of an involuntary filing.  *Id.*

10                  While the term "cause" is not defined in the Code, courts have granted relief from

11   the stay under section 362(d)(1) "when necessary to permit pending litigation to be concluded in

12   another forum if the non-bankruptcy suit involves multiple parties or is ready for trial." *In re*

13   *Plumberex Specialty Products, Inc.*, 311 B.R. 551, 556 (Bankr. C.D. Cal. 2004); *see also In re*

14   *Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986) (granting relief from stay for cause to allow

15   state court trial to proceed).  Courts have allowed relief from the stay to permit the continuance

16   of a civil suit against a debtor where (1) no "great prejudice" to the debtor would result, (2) the

17   hardship to the plaintiff caused by the stay considerably outweighs the hardship caused to the

18   debtor by the modification of the stay, and (3) public policy supports the type of action brought

19   against the debtor. *In re America West Airlines,* 148 B.R. 920, 923 (B.A.P. 9th Cir. 1993).  In

20   making this decision, courts also weigh: (1) whether judicial economy favors the action

21   proceeding in state court, (2) whether the resources used to prepare the matter for determination

22   in state court will be wasted due to the stay, (3) whether the dispute is over "solely state law"

23   claims or "a special tribunal should use its expertise to hear the issues," (4) "whether the

24   litigation involves other parties in which the Bankruptcy Court lacks jurisdiction and whether

25   full relief may be accorded to all non-debtor parties without the debtor's presence," (6) whether

26   the moving party "has a probability of success on the merits," (7) whether the Bankruptcy Court

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    needs to first address "threshold bankruptcy-law issues," and (8) whether insurance is available

2    to defend the debtor. *Id.* at 923, 925.

3         Here, no great prejudice to the LLC will result from the lifting of the stay to allow

4    the Litigation to proceed.  The matters to be heard (the summary judgment and the motion for

5    preliminary injunction to expel Prentice as a manager) are pending before the state court and

6    await scheduling of a hearing.  Heekin Dec., ¶ 5.  The state court judge has a long history and a

7    good understanding of the matters involved in the Litigation.  Judicial economy strongly favors

8    these motions being heard in state court.  The parties had submitted a proposed briefing schedule

9    and request for hearing dates for the summary judgment and preliminary injunction motions

10   when the involuntary bankruptcy was filed, and could proceed in short order once relief from the

11   stay is granted.  *Id.*  On the other hand, if these issues are litigated in bankruptcy court, all prior

12   efforts will have to be duplicated and unnecessary attorney fees will be incurred.

13        The disputes at issue are purely state court claims dealing with the management

14   and control of the LLC under its operating agreement.  No specific threshold bankruptcy

15   decisions are required in order to move forward with the Litigation.  Quite to the contrary, a

16   determination regarding the control of the LLC is needed first in order to move forward with this

17   involuntary case.

18        Importantly, Bott does not seek any money judgment against the LLC; thus,

19   continuation of the state court action to pursue a ruling on who controls the LLC will not burden

20   the estate.  In fact, lifting the stay and allowing the state court judge to make the determination

21   regarding control will benefit the bankruptcy estate by providing assurance that the LLC is being

22   properly controlled during the bankruptcy process and will make the bankruptcy much more

23   efficient and considerably less expensive and contentious.  In any event, a court will not

24   ordinarily deny relief from a stay based on litigation costs to the debtor or bankruptcy estate.  *In*

25   *re Santa Clara Cnty. Fair Ass'n, Inc.,* 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995).

26   / / /

Page 5 of 6 -    MOTION FOR RELIEF FROM STAY OF DR. RODERICH BOTT
                 P:\DOCS\DRBOTT\07047\PLDG\3IL1702.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1         WHEREFORE, Bott respectfully requests that this Court enter an order granting

2  relief from the automatic stay and allow him to pursue the summary judgment motion and

3  preliminary injunction motion in the Litigation.

4         Dated: May 16, 2014.

5                    FARLEIGH WADA WITT

6

7                    By:/s/ Tara J. Schleicher

8                       Tara J. Schleicher, OSB #954021
                           (503) 228-6044

9                       tschleicher@fwwlaw.com
                       Of Attorneys for Dr. Roderich Bott

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Tara J. Schleicher, OSB #954021
     tschleicher@fwwlaw.com
2    Farleigh Wada Witt
     121 SW Morrison Street, Suite 600
3    Portland, Oregon 97204-3136
     Telephone: (503) 228-6044
4
          Attorneys for Dr. Roderich Bott
5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9                   FOR THE DISTRICT OF OREGON

10   In re                              Case No. 14-32565-tmb11

11   Dr. Bott, LLC,

12                                       DECLARATION OF DR. RODERICH BOTT
                          Debtor.        IN SUPPORT OF MOTION FOR RELIEF
13                                       FROM STAY

14

15        I, Dr. Roderich Bott ("Bott"), do hereby declare as follows:

16        1.      I am a citizen and a resident of the Federal Republic of Germany.  I make

17   this declaration based upon my own personal knowledge.

18        2.      I am one of the two owners and members of an Oregon limited liability

19   company that was formed as Dr. Bott, LLC (the "LLC").  I own 75% of the membership shares

20   of the LLC.  Eric W. Prentice ("Prentice") owns the remaining 25% of the LLC's shares.

21        3.      The LLC was formed by myself and Prentice in April of 1999.  Until the

22   LLC recently stopped engaging in the ordinary course of its business, it was in the business of,

23   among other things, selling, and re-selling specialized Apple compatible products to retailers,

24   wholesalers and other customers.

25        4.      Under the terms of the LLC's Operating Agreement, Prentice is the

26   Operating Manager responsible for conducting the "day-to-day Operations" of the LLC, but

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    without authority to make "Major Decisions."  A copy of the Operating Agreement is attached

2    hereto and incorporated herein as Exhibit 1.  Rather, major decisions are not to be made without

3    the prior written approval or consent of a majority of the members.

4            5.      In 2011, I learned of certain self-interested financial transactions taken by

5    Prentice that appeared to breach Prentice's fiduciary duties to the LLC as well as Prentice's

6    apparent gross mismanagement of the LLC's books and records.   Attached hereto and

7    incorporated herein as Exhibit 2 is an excerpt from my counterclaims against Prentice and

8    derivative action on behalf of the LLC against Prentice in the case of *Dr. Bott, LLC et. al. v. Dr.*

9    *Roderich Bott,* Multnomah County Circuit Court Case No. 1112-15996 (the "Litigation").

10            I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE

11   BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE

12   FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

13            Dated: May 16, 2014.

14

15                                /s/ Dr. Roderich Bott
                                       Dr. Roderich Bott

16                                        Unterhain, Germany

17

18

19

20

21

22

23

24

25

26

DECLARATION OF DR. RODERICH BOTT IN SUPPORT OF MOTION FOR
RELIEF FROM STAY
P:\DOCS\DRBOTT\07047\PLDG\3IM3318.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

⌣ )                                    ⌣)

### LIMITED LIABILITY COMPANY
### OPERATING AGREEMENT

### DR. BOTT LLC
### An Oregon Limited Liability Company

THIS OPERATING AGREEMENT is made and entered into effective April 1, 1999, by and among Dr. Roderich Bott, and Eric W. Prentice (collectively referred to in this agreement as the "Members").

## SECTION 1. THE LIMITED LIABILITY COMPANY

**1.1. Formation.** Effective April, 1, 1999 the Members form an Oregon limited liability company under the name DR. BOTT LLC (the "Company"), on the terms and conditions in this Operating Agreement (the "Agreement") and pursuant to the Oregon Limited Liability Company Act (the "Act"). Effective April, 1, 1999 the Members agree to cause to be filed with the Corporation Division of the Oregon Secretary of State's office Articles of Organization for the Company. The rights and obligations of the parties are as provided in the Act except as otherwise expressly provided in this Agreement.

**1.2. Name.** The business of the Company will be conducted under the name DR. BOTT LLC or such other name as the Members unanimously may agree on.

**1.3. Purpose.** The Company may conduct or promote any lawful business or purpose that a partnership or corporation may conduct or promote. The primary purpose of the Company is to engage in the wholesale and retail sale of computer hardware and software products, and to engage in all activities reasonably necessary and incidental thereto.

**1.4. Office.** The Company will maintain its principal business office within Oregon at 8185 SW Alden St. Suite 5, Portland, Oregon 97223.

**1.5. Registered Agent.** C. Jeffrey Abbott is the Company's initial registered agent in Oregon and the registered office is at One World Trade Center 121 SW Salmon, Suite 1030, Portland, Oregon 97204

**1.6. Term.** The term of the Company commences on April 1, 1999 and shall be perpetual unless sooner terminated as provided in this Agreement.

**1.7. Names and Addresses of Members.** The Members' names and addresses are as follows:

Name _____    Address _____

**DR. BOTT LLC OPERATING AGREEMENT - 1**

EXHIBIT 1
Page 1 of 18

| 1 | Dr. Roderich Bott | Ortsstr. 37 D-07426 Unterhain Germany |
|---|---|---|
| 2 | Eric W. Prentice | 8185 SW Alden St. Suite 5, Portland, Oregon 97223 |

**1.8. Admission of Additional Members.** Except as otherwise expressly provided in this Agreement, no additional members may be admitted to the Company through issuance by the company of a new interest in the Company without the prior unanimous written consent of the Members.

## SECTION 2. CAPITAL CONTRIBUTIONS

**2.1. Initial Capital Contributions.** Each Member's respective initial capital contribution is to be made to the Company no later than the date this Agreement is executed, and their initial Capital Accounts (defined in Section 6.7) in the Company is:

| Name | Initial Capital Accounts |
|---|---|
| Dr. Roderich Bott | $45,000.00 |
| Eric W. Prentice | $15,000.00 |

**2.2. Ownership Interest.** Each Member's percentage interest in the Company (the "Ownership Interest") is:

| Name | Initial Capital Percentages |
|---|---|
| Dr. Roderich Bott | 75% |
| Eric W. Prentice | 25% |

**2.3. Additional Capital Contributions.** The Members intend that to the maximum extent possible, Company obligations are to be paid from operating cash flows and from Company borrowings, whether short term or longer term. To the extent cash flow from operations and borrowings are not sufficient to meet the obligations of the Company as they become due, then, on the prior consent of all Members, the Members will contribute to the Company proportionately to their Ownership Interests the funds necessary to meet such obligations.

**2.4. No Interest on Capital Contributions.** Members are not entitled to interest or other compensation for or on account of their capital contributions to the Company except to the extent, if any, expressly provided in this Agreement.

## SECTION 3. ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS

DR. BOTT LLC OPERATING AGREEMENT - 2

EXHIBIT 1
Page 2 of 18

**3.1. Income and Loss Determination.** The Company's taxable income or loss for each fiscal year will be determined as of the end of the fiscal year by the Company's accountants in accordance with federal income tax accounting principles, consistently applied, using that method of accounting employed in the federal income tax informational return filed by the Company for that fiscal year.

**3.2. Allocations of Income and Loss.** All items of income, gain, loss, deduction, and credit will be allocated among the Members pro rata in proportion to their respective Ownership Interests.

**3.3. Distributions.** Except as provided in SECTION 8, distributions will be made to the Members pro rata in proportion to their respective Ownership Interests at times and in amounts as the Operating Manager may deem appropriate or advisable; provided, however, that if any Default Advances then remain unpaid and outstanding, distributions otherwise payable to the Defaulting Member instead will be paid to the Advancing Members in chronological order of the Default Advances until all Default Advances made on behalf of the Defaulting Member and all accrued and unpaid interest and costs of collection are repaid in full.

**3.3.1.** Notwithstanding Section 3.3, no distribution may be made to any Member if, after giving effect to the distribution, in the judgment of the Operating Manager, determined as permitted in the Act, either (1) the Company would not be able to pay its debts as they become due in the ordinary course of business, or (2) the fair value of the total assets of the Company would not at least equal its total liabilities.

**3.4. Transfer of Interest by Member During Fiscal Year.** If any Member transfers all or a portion of an interest in the Company during any fiscal year of the Company consistent with the provisions of SECTION 7, by sale, exchange, transfer, assignment, gift, death, operation of law, or in any other manner, the income or deduction of the Company allocable to the membership interest so transferred will be prorated between the transferor and the transferee in accordance with the number of days during the fiscal year each owned the interest, but, unless otherwise agreed between the Member and the transferee, gains or losses recognized from the sale or conveyance of Company assets will be allocated based on a closing of the books to the Member owning the interest at the time of the sale or conveyance.

**3.5. No Right to Demand Return of Capital.** No Member has any right to any return of capital or other distribution except as expressly provided in this Agreement. No Member has any drawing account in the Company.

## SECTION 4. POWERS AND DUTIES OF MANAGERS

**4.1. Management of Company.** The management and control of the Company and its business and affairs are exclusively in the Members. The Members, or any of them, have all the

DR. BOTT LLC OPERATING AGREEMENT - 3

EXHIBIT 1
Page 3 of 18

powers that may be possessed by a member in a limited liability company without managers pursuant to the Act.

4.1.1. Notwithstanding Section 4.1, the Members agree among themselves that, except as otherwise provided in Section 4.2, in connection with Major Decisions (defined in Section 4.2), the right to manage the day-to-day operations of the Company rests exclusively in **Eric W. Prentice** (the "Operating Manager"). Consistent with and subject to the foregoing, the Operating Manager has all the rights and powers that may be possessed by a manager in a limited liability company with managers pursuant to the Act, and such rights and powers as are otherwise conferred by law or are necessary, advisable, or convenient to the discharge of the Operating Manager's duties under this Agreement and to the management of the business and affairs of the Company. Without limiting the generality of the foregoing, subject to the restrictions set forth in Section 4.2, the Operating Manager has the following rights and powers (which he or she may exercise at the cost, expense, and risk of the Company):

4.1.1.1. To expend the funds of the Company in furtherance of the Company's business;

4.1.1.2. To perform all acts necessary to fulfill the purposes of the Company, including engaging persons the Operating Manager deems advisable to fulfill those purposes;

4.1.1.3. To execute, deliver, and perform on behalf of and in the name of the Company, without any other signature, agreements and documents deemed necessary or desirable by the Operating Manager to carry out the business of the Company, including any lease, deed, easement, bill of sale, mortgage, trust deed, security agreement, contract of sale, or other document conveying, leasing, or granting a security interest in the interest of the Company in any of its assets, or any part thereof, whether held in the Company's name, the name of the Operating Manager, or otherwise; and

4.1.1.4. To borrow or raise money on behalf of the Company in the Company's name or in the name of the Operating Manager for the benefit of the Company and, from time to time, to draw, make, accept, endorse, execute, and issue promissory notes, drafts, checks, and other negotiable or nonnegotiable instruments and evidences of indebtedness, and to secure their payment by mortgage, security agreement, pledge, conveyance, or assignment in trust of the whole or any part of the assets of the Company, including contract rights.

4.2. **Restriction on Authority of Operating Manager.** Notwithstanding any other provision of this Agreement, without the prior written approval or consent of a Majority of the

DR. BOTT LLC OPERATING AGREEMENT - 4

EXHIBIT 1
Page 4 of 18

Members, the Operating Manager does not have any authority to do any of the following (the "Major Decisions"):

4.2.1. Amend the Company's Articles of Organization or this Agreement;

4.2.2. Acquire any land or other real property or interest in land or other real property other than any easement, right-of-way, or other similar interest reasonably required, in the opinion of the Operating Manager, for the ownership or operation of the Company's Property;

4.2.3. Sell, transfer, or exchange all or substantially all of the property owned by the Company; provided, however, this shall not apply to sales in the ordinary course of business;

4.2.4. Execute any lease or other arrangement involving the rental, use, or occupancy of the Property or any part of it if such lease or other arrangement is for a net rentable area of more than 3,000 square feet or is for a term (including renewal options) in excess of five years; or

4.2.5. Construct any improvements or make any capital improvements, repairs, alterations, or changes in or to the Property involving in any instance an expenditure in excess of $10,000, except for matters expressly delegated to the Operating Manager by the Members.

4.3. **Member's Exercise of Authority.** Notwithstanding any other provision of this Agreement, should any Member who is not an Operating Manager exercise any right or power vested in the Member as a manager of the Company (other than voting or consenting to Major Decisions as provided in Section 4.2), on the approval of Members owning a majority of the Ownership Interests held by Members other than the breaching Member, the Company or such remaining Members have the option, but not the obligation, to purchase and acquire the interest of that Member in the Company for an amount equal to 60% of the amount that the Member otherwise would receive if the Company's assets were then sold and the proceeds distributed in liquidation to all Members in accordance with this Agreement. Payment for that Member's interest in the Company will be unsecured and will not be less than 20% of the purchase price at closing, and 20% of the purchase price on each anniversary of the closing until paid. This paragraph shall not apply to a transaction that does not hinder or restrict working capital and has the effect of increasing Company profits or cause assets of the Company to appreciate; such other Member shall not unreasonably withhold consent to such transaction.

4.4. **Tax Matters Member.** Eric W. Prentice is hereby designated and approved as Tax Matters Member for the Company; in such capacity, Eric W. Prentice is authorized to participate in any audit of the Company's federal income tax return, and in connection therewith, to negotiate, settle, and make agreements and adjustments with respect to the Company's federal

DR. BOTT LLC OPERATING AGREEMENT - 5

EXHIBIT 1
Page 5 of 18

income tax return that will be binding on all the Members; provided, however, that Eric W. Prentice first consult with and obtain the approval of the other Members concerning any audit adjustments proposed to be made to the Company's federal income tax return. Eric W. Prentice, as Tax Matters Member, must notify all Members of any final Company audit adjustments.

**4.5. Duties of the Operating Manager.** The Operating Manager must take all actions that may be necessary or appropriate for the continuation of the Company's valid existence as a limited liability company under the laws of Oregon and of each jurisdiction in which such existence is necessary for the Company to conduct the business in which it is engaged and for the accomplishment of the Company's purposes, including the preservation and operation of Company assets in accordance with the provisions of this Agreement and applicable laws and regulations. Notwithstanding the foregoing, the Operating Manager is not required to devote his or her full time to the business and affairs of the Company, but must devote such time as reasonably is necessary to perform his or her duties under this Agreement and prudently to manage or operate the Company's assets and conduct its business.

**4.6. Limitation on Liability of Operating Manager.** The Operating Manager has no liability to the Company or to any other Member for any loss suffered by the Company or any Member that arises out of any action or inaction of the Operating Manager if the Operating Manager, in good faith, determined that such course of conduct was in the best interest of the Company and such course of conduct did not constitute gross negligence or intentionally wrongful misconduct.

**4.7. Indemnification of Operating Manager.** The Operating Manager is not personally liable for any debt, obligation, or liability of the Company merely by reason of being the Operating Manager or a Member. To the fullest extent provided or allowed by the laws of Oregon, the Company will indemnify the Operating Manager, in his or her capacity as Operating Manager, from and against all costs, losses, liabilities, damages, claims, and expenses (including attorney fees as incurred at trial and on appeal) (collectively, "Claims") arising from actions or inactions taken or omitted in his or her capacity as Operating Manager, including, without limitation, action taken or omitted by the Operating Manager consistent with this Agreement and in furtherance of the business or affairs of the Company. The satisfaction of any indemnification of the Operating Manager under this Agreement will be from, and limited to, Company assets, and the Members will not have any personal liability on account thereof.

**4.8. Other Business.** Each Member is entitled to enter into transactions that may be considered to be competitive with, or a business opportunity that may be beneficial to, the Company, it being expressly understood that the Members may enter into transactions that are similar to the transactions into which the Company may enter, and the Company and each Member hereby waive any right or claim to participate in them except as consented to by all of the Members.

DR. BOTT LLC OPERATING AGREEMENT - 6

EXHIBIT 1
Page 6 of 18

**4.9. Decisions by Members.** Whenever in this Agreement reference is made to the decision, consent, approval, judgment, or action of the Members, unless otherwise expressly provided in this Agreement, such decision, consent, approval, judgment, or action shall mean a Majority of the Members.

**4.10. Withdrawal by a Member.** A Member has no power to withdraw from the Company.

## SECTION 5. SALARIES, REIMBURSEMENT, AND PAYMENT OF EXPENSES

**5.1. Organization Expenses.** The Company will pay all expenses incurred in connection with organization of the Company.

**5.2. Reimbursements.** The Operating Manager is entitled to reimbursement from the Company for actual out-of-pocket expenses of the Company reasonably incurred in connection with the Company's business.

**5.3. Salary.** No salary will be paid to a Member for the performance of his or her duties under this Agreement unless the salary has been approved in writing by a Majority of the Members. It is agreed, however, that Eric W. Prentice shall receive a salary as operating manager in the amount of $55,000.00 per year, payable monthly. The Company shall also pay for medical insurance for Eric W. Prentice and his dependents. In addition, a bonus shall be paid to Eric W. Prentice in the amount of 25 percent of net income (after expenses prior to the bonus) for the calendar year; provided, however, if net income is greater than 40 percent but less than 70 percent of the prior Jan. 1 total of all Capital Accounts, such bonus percentage shall be 35 percent of net income; if net income is greater than 70 percent of the prior Jan. 1 total of all Capital Accounts, such bonus shall be 45 percent of net income. For the 1999 calendar year, the total of all Capital Accounts as of April 1, 1999 shall be used instead of the total of Capital Accounts on Jan. 1, 1999. Such bonus shall be paid on or before March 1 of each year following the applicable calendar year. Net income shall be measured using the accrual method of accounting in accordance with generally accepted accounting principles consistently applied.

**5.4. Insurance.** At all times, the Operating Manager must obtain and keep in full force and effect a comprehensive public liability policy and a property damage policy in amounts, with companies, and on terms acceptable to a Majority of the Members. Each policy of insurance covering any Company property or any portion of any Company property must provide that the policy may not be canceled without at least 10 days' written notice to the Members.

**5.5. Legal and Accounting Services.** The Operating Manager is authorized to obtain legal and accounting services to the extent reasonably necessary for the conduct of the Company's business.

**DR. BOTT LLC OPERATING AGREEMENT - 7**

EXHIBIT 1
Page 7 of 18

## SECTION 6. BOOKS OF ACCOUNT, ACCOUNTING REPORTS, TAX RETURNS, FISCAL YEAR, BANKING

6.1. **Books of Account.** At the expense of the Company, the Operating Manager must maintain records and accounts of all operations and expenditures of the Company at the principal office of the Company. At a minimum, the Company records must include (1) a current list of the full name and last-known business, residence, or mailing address of each Member, both past and present; (2) a copy of the Articles of Organization and all amendments; (3) a copy of the Company's currently effective written Operating Agreement and all amendments; and (4) copies of the Company's federal, state, and local income tax returns and reports, if any, for the three most recent years. Each Member has access to these at all reasonable times. The Operating Manager must keep and maintain books and records of the operations of the Company that are appropriate and adequate for the Company's business and for carrying out this Agreement. The Operating Manager must prepare the books and records on the accrual basis using generally accepted accounting principles consistently applied.

6.2. **Accounting Reports.** Within 120 days after the end of each fiscal year of the Company, the Operating Manager must furnish each Member with copies of internally prepared financial statements of the Company.

6.3. **Audit.** At any time, on the written request of a Member, an audit of the accounting books of the Company will occur at the expense of the Company. All Members must cooperate fully with the accountant conducting the audit.

6.4. **Tax Returns.** The Operating Manager must cause to be prepared and, on the review and approval of them by a Majority of the Members, must timely file with the appropriate authorities as necessary all federal and state income tax returns for the Company. Within 90 days after the end of each taxable year, or within a lesser time prescribed by the Internal Revenue Service, each Member will be furnished with a statement that may be used by the Member in the preparation of the Member's income tax returns, showing the amounts of any distributions, gains, profits, losses, deductions, or credits allocated to him or her during the fiscal year.

6.5. **Method of Accounting.** The Company will use the method of accounting previously determined by the Members for financial reporting and tax purposes.

6.6. **Fiscal Year; Taxable Year.** The fiscal year and the taxable year of the Company are the calendar year.

6.7. **Capital Accounts.** The Company will maintain a Capital Account for each Member on a cumulative basis in accordance with federal income tax accounting principles set forth in Treasury Regulation §1.704-1(b)(2)(iv).

DR. BOTT LLC OPERATING AGREEMENT - 8

EXHIBIT 1
Page 8 of 18

**6.8. Banking.** All funds of the Company will be deposited in a separate bank account or in an account or accounts of a savings and loan association in the name of the Company as determined by a Majority of the Members. Company funds will be invested or deposited with an institution, the accounts or deposits of which are insured or guaranteed by an agency of the United States government. Company funds may be withdrawn from Company accounts on the signature of the Operating Manager or Dr. Roderich Bott.

**6.9. Management of Funds.** The Operating Manager must hold and disburse all funds of the Company in accordance with the terms of this Agreement and must account for all funds as a fiduciary. All funds of the Company held by a Member must be held in trust for the benefit of the Company and must not be commingled with other funds of a Member, not be the personal property of a Member, and, to the maximum extent permitted by law, not be vulnerable to inclusion in the bankruptcy estate of a Member.

**6.10. Mandatory Distributions to Members.** The Company shall, on or before April 15 of each calendar year, make cash distributions to each Member an amount equal to 40% of the Member's ratable share of taxable income for federal income tax purposes plus the ratable share of other income items passing through to the Members as a result of the Company's business operations, for the prior calendar year. The distributions may be made earlier with the consent of all Members. The intent of this section is to provide Members with cash distributions in an amount approximating the state and federal individual tax applicable from Company income and pass through items taxed to Members.

## SECTION 7. TRANSFER OF MEMBERSHIP INTEREST

**7.1. Sale or Encumbrance Prohibited.** Except as otherwise permitted in this Agreement, no Member may voluntarily or involuntarily, directly or indirectly, transfer, sell, convey, encumber, pledge, assign, or otherwise dispose of (collectively, "Transfer") an interest in the Company without the prior written consent of a majority of the Ownership Interests held by the other nontransferring Members.

**7.2. Right of First Offer.** Notwithstanding Section 7.1, a Member may transfer all or any part of the Member's interest in the Company (the "Interest") as follows:

**7.2.1.** The Member desiring to transfer his or her Interest first must provide written notice (the "Notice") to the other Members, specifying the price and terms on which the Member is prepared to sell the Interest (the "Offer").

**7.2.2.** For a period of 30 days after receipt of the Notice, the Members have the right, but not the obligation, to acquire all, but not less than all, of the Interest at the price and under the terms specified in the Offer. If the other Members desiring to acquire the Interest cannot agree among themselves on the allocation of the Interest among them, the

DR. BOTT LLC OPERATING AGREEMENT - 9

EXHIBIT 1
Page 9 of 18

allocation will be proportional to the Ownership Interests of those Members desiring to acquire the Interest.

7.2.3. Closing of the sale of the Interest will occur as stated in the Offer; provided, however, that the closing will not be less than 45 days after expiration of the 30-day notice period.

7.2.4. If the other Members fail or refuse to notify the transferring Member of their desire to acquire all of the Interest proposed to be transferred within the 30-day period following receipt of the Notice, then the Members will be deemed to have waived their right to acquire the Interest on the terms described in the Offer, and the transferring Member may sell and convey the Interest consistent with the Offer to any other person or entity; provided, however, that notwithstanding anything in Section 7.2 to the contrary, should the sale to a third person be at a price or on terms that are more favorable to the purchaser than stated in the Offer, then the transferring Member must reoffer the sale of the Interest to the remaining Members at that other price or other terms; provided, further, that if the sale to a third person is not closed within six months after the expiration of the 30-day period described above, then the provisions of Section 7.1 will again apply to the Interest proposed to be sold or conveyed.

7.3. Substituted Parties. Any transfer in which the transferee becomes a fully substituted Member is not permitted unless and until:

7.3.1. The transferor and assignee execute and deliver to the Company the documents and instruments of conveyance necessary or appropriate in the opinion of counsel to the Company to effect the transfer and to confirm the agreement of the permitted assignee to be bound by the provisions of this Agreement; and

7.3.2. The transferor furnishes to the Company an opinion of counsel, satisfactory to the Company, that the transfer will not cause the Company to terminate for federal income tax purposes or that any termination is not adverse to the Company or the other Members.

7.4. Death, Incompetency, or Bankruptcy of Member. On the death, adjudicated incompetence, or bankruptcy of a Member, unless the Company exercises its rights under Section 7.5 and subject to the exercise of rights by Members under Section 7.6, the successor in interest to the Member (whether an estate, bankruptcy trustee, or otherwise) will receive only the economic right to receive distributions whenever made by the Company and the Member's allocable share of taxable income, gain, loss, deduction, and credit (the "Economic Rights") unless and until a majority of the Ownership Interests held by the other Members admit the transferee as a fully substituted Member in accordance with the provisions of Section 7.3.

**DR. BOTT LLC OPERATING AGREEMENT - 10**

EXHIBIT 1
Page 10 of 18

7.4.1. Any transfer of Economic Rights pursuant to Section 7.4 will not include any right to participate in management of the Company, including any right to vote, consent to, or approve any actions of the Operating Manager, and will not include any right to information on the Company or its operations or financial condition. Following any transfer of only the Economic Rights of a Member's Interest in the Company, the transferring Member's power and right to vote or consent to any matter submitted to the Members will be eliminated, and the Ownership Interests of the remaining Members, for purposes only of such votes, consents, and participation in management, will be proportionately increased until such time, if any, as the transferee of the Economic Rights becomes a fully substituted Member.

7.5. **Death Buyout.** Notwithstanding Section 7.4, the Members covenant and agree that on the death of any Member, the Company, at its option, by providing written notice to the estate of the deceased Member within 180 days of the death of the Member, may purchase, acquire, and redeem the Interest of the deceased Member in the Company pursuant to Section 7.5.

7.5.1. The value of each Member's Interest in the Company will be determined on the date this Agreement is signed, and the value will be endorsed on Exhibit A, which is attached to and made a part of this Agreement. The value of each Member's Interest will be redetermined unanimously by the Members annually, unless the Members unanimously decide to redetermine those values more frequently. The Members will use their best efforts to endorse those values on Exhibit A. The purchase price for a decedent Member's interest conclusively is the value last determined before the death of such Member; provided, however, that if the latest valuation is more than two years before the death of the deceased Member, the provisions of Section 7.5.2 will apply in determining the value of the Member's Interest in the Company.

7.5.2. If the Members have failed to value the deceased Member's Interest within the prior two-year period, the value of each Member's Interest in the Company on the date of death, in the first instance, will be determined by mutual agreement of the surviving Members and the personal representative of the estate of the deceased Member. If the parties cannot reach an agreement on the value within 30 days after the appointment of the personal representative of the deceased Member, then the surviving Members and the personal representative each must select a qualified appraiser within the next succeeding 30 days. The appraisers so selected must attempt to determine the value of the Company Interest owned by the decedent at the time of death based solely on their appraisal of the total value of the Company's assets and the amount the decedent would have received had the assets of the Company been sold at that time for an amount equal to their fair market value and the proceeds (after payment of all Company obligations) were distributed in the manner contemplated in SECTION 8. The appraisal may not consider and discount for the sale of a minority interest in the Company or the lack of marketability of such interest. In the event the appraisers cannot agree on the value within 30 days after being

**DR. BOTT LLC OPERATING AGREEMENT - 11**

EXHIBIT 1
Page 11 of 18

selected, the two appraisers must, within 30 days, select a third appraiser. The value of the Interest of the decedent in the Company and the purchase price of it will be the average of the two appraisals nearest in amount to one another. That amount will be final and binding on all parties and their respective successors, assigns, and representatives. The costs and expenses of the third appraiser and any costs and expenses of the appraiser retained but not paid for by the estate of the deceased Member will be offset against the purchase price paid for the deceased Member's Interest in the Company.

7.5.3. Closing of the sale of the deceased Member's Interest in the Company will be held at the office of the Company on a date designated by the Company, and will not be later than 90 days after agreement with the personal representative of the deceased Member's estate on the fair market value of the deceased Member's Interest in the Company; provided, however, that if the purchase price is determined by appraisals as set forth in Section 7.5.2, the closing will be 30 days after the final appraisal and purchase price is determined. If no personal representative has been appointed within 60 days after the deceased Member's death, the surviving Members have the right to apply for and have a personal representative appointed.

7.5.4. The purchase price will be paid by the Company by executing and delivering its promissory note for the purchase price, with interest at the prime interest rate stated by US Bank at the time of the deceased Member's death. Interest will be payable monthly, with the principal sum being due and payable in three equal annual installments. The promissory note will be unsecured and will contain provisions that the principal sum may be paid in whole or in part at any time, without penalty.

7.5.5. At the closing, the deceased Member's estate or personal representative must assign to the Company all of the deceased Member's Interest in the Company free and clear of all liens, claims, and encumbrances, and, at the request of the Company, the estate or personal representative must execute all other instruments as may reasonably be necessary to vest in the Company all of the deceased Member's right, title, and interest in the Company and its assets. If either the Company or the deceased Member's estate or personal representative fails or refuses to execute any instrument required by this Agreement, the other party is hereby granted the irrevocable power of attorney which, it is agreed, is coupled with an interest, to execute and deliver on behalf of the failing or refusing party all instruments required to be executed and delivered by the failing or refusing party.

7.5.6. On completion of the purchase of the deceased Member's Interest in the Company, the Ownership Interests of the remaining Members will increase proportionately to their then-existing Ownership Interests.

7.6. **Deadlock Buyout.** The provisions of this Section 7.6 shall apply if (1) this Agreement requires the unanimity of the Members, (2) the Members cannot agree among

**DR. BOTT LLC OPERATING AGREEMENT - 12**

EXHIBIT 1
Page 12 of 18

themselves as to a decision or course of action (a "Deadlock"), (3) a Member delivers to the other Members a written notice of the Member's election to invoke the provisions of this Section 7.6 (a "Deadlock Notice"), and (4) unanimity cannot be reached within 45 days after delivery of the Deadlock Notice to the other Members.

7.6.1. A Member who believes that there is a Deadlock may deliver to the other Members a Deadlock Notice stating with particularity the issue or decision on which the Member believes there is a Deadlock. If the Members cannot resolve the Deadlock within 45 days after delivery of the Deadlock Notice to other Members (the "Resolution Period"), then during the 30-day period after expiration of the Resolution Period, any Member (the "Initiating Member") may deliver to the other Members (the "Responding Members") a written notice (the "Buyout Notice") invoking the provisions of this Section 7.6. The Buyout Notice shall set forth a dollar figure selected by the Initiating Member for the total value of the Company's assets, such value to be determined without regard to any debts, mortgages, or other liabilities of the Company (which figure is hereinafter referred to as the "Total Asset Value").

7.6.2. Within 60 days after the delivery of such notice by the Initiating Member, the Responding Members or any of them shall furnish written notice to the Initiating Member electing either to purchase the Initiating Member's entire rights and interests in the Company or to sell the Responding Members' entire rights and interest in the Company to the Initiating Member, at the cash purchase price provided for in Section 7.6.5. If the Responding Members shall not effectively give either notice, then the Responding Members shall be deemed to have elected to sell their rights and interests in the Company to the Initiating Member at such purchase price.

7.6.3. For purposes of this Section 7.6.3, the election of the Responding Members shall be determined in accordance with the following:

7.6.3.1. If all Responding Members elect to acquire the Initiating Member's interest, the Responding Members shall acquire that interest proportionately to their respective Ownership Interests or as they otherwise may agree;

7.6.3.2. If less than all the Responding Members elect to acquire the Initiating Member's interest, the Responding Members so electing shall acquire the Initiating Member's interest proportionately to the Ownership Interests of the Responding Members electing to purchase, or in such other proportions as they may otherwise agree;

7.6.3.3. If none of the Responding Members elects to acquire the Initiating Member's interest, then the Initiating Member must acquire all of the interests of all Responding Members; or

**DR. BOTT LLC OPERATING AGREEMENT - 13**                    *EW*    *RB*

EXHIBIT 1
Page 13 of 18

7.6.3.4. Responding Members cannot acquire the interests of other Responding Members who do no elect to participate in the acquisition of the Initiating Member's interest as the result of a Deadlock except in accordance with the provisions of this Section 7.6 wherein such purchasing Responding Member becomes an Initiating Member.

7.6.4. Closing shall take place on the 30th day after the expiration of the 60-day period provided in Section 7.6.2 for the giving of notice of election by the Responding Members or, if that 30th day shall fall on a weekend or a holiday, then on the next ensuing business day thereafter. The closing shall occur at a time and place in Portland, Oregon, to be designated by the purchasing Member. At the time and place of closing, the selling Member(s) shall convey, transfer, and assign to the purchasing Member(s) by assignment, bill of sale, and such other instruments of transfer as shall reasonably be required, all of the selling Members' rights and interests in and to the Company and all its assets, and shall, to the extent requested by the purchasing Member(s), cooperate to effect the smooth and efficient continuation of Company affairs.

7.6.5. The purchase price to be paid by the purchasing Member(s) to the selling Member(s) shall be equal to the amount that the selling Member(s) would have received if all of the Company's assets had been sold on the date of closing for a cash price equal to the Total Asset Value, and the proceeds thereof were applied and distributed in the manner provided in SECTION 8 of this Agreement, except that any reserves for contingencies shall not be taken into account for this purpose. The purchase price shall be payable in its entirety in cash, cashier's check, wire transfer, or certified funds (which funds shall be immediately available in Portland, Oregon) at closing.

## SECTION 8. DISSOLUTION AND WINDING UP OF THE COMPANY

8.1. Dissolution. The Company will be dissolved on the happening of any of the following events:

8.1.1. The consent of all of the Members to dissolve the Company; or

8.1.2. By operation of law.

8.2. Winding Up. On the dissolution of the Company, the Members must take full account of the Company's assets and liabilities, and the assets will be liquidated as promptly as is consistent with obtaining their fair value, and the proceeds, to the extent sufficient to pay the Company's obligations with respect to the liquidation, will be applied and distributed, after any gain or loss realized in connection with the liquidation has been allocated in accordance with SECTION 3 this Agreement, and the Members' Capital Accounts have been adjusted to reflect the allocation and all other transactions through the date of the distribution, in the following order:

**DR. BOTT LLC OPERATING AGREEMENT - 14**

*EP ,23*

EXHIBIT 1
Page 14 of 18

**8.2.1.** To payment and discharge of the expenses of liquidation and of all the Company's debts and liabilities to persons or organizations including Members; and

**8.2.2.** To Members in the amount of their respective adjusted Capital Account balances on the date of distribution; provided, however, that any then-outstanding Default Advances (with interest and costs of collection) first must be repaid from distributions otherwise allocable to the Defaulting Member pursuant to SECTION 2.

## SECTION 9. GENERAL PROVISIONS

**9.1. Amendments.** Any Member may propose amendments to this Agreement. A proposed amendment will be adopted and become effective as an amendment only on the written approval of all the Members.

**9.2. Governing Law.** This Agreement and the rights and obligations of the parties under it are governed by and interpreted in accordance with the laws of the state of Oregon (without regard to principles of conflicts of law).

**9.3. Waiver of Action for Partition.** Each of the Members irrevocably waives, during the existence of the Company and during the period of its winding up and liquidation following any event of dissolution, any right that the Member may have to maintain any action for partition with respect to any of the assets of the Company.

**9.4. Counterparts.** This Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same counterpart. All counterparts will be construed together and will constitute one and the same Agreement. A single counterpart may be introduced as evidence of this Agreement.

**9.5. Parties in Interest.** Subject to the limitations on transfers of membership interests set forth in SECTION 7 of this Agreement, each and every covenant, term, provision, and agreement is binding on and inures to the benefit of the parties and their heirs, successors, assigns, and legal representatives.

**9.6. Entire Agreement; Modification.** This Agreement constitutes the entire understanding and agreement between the Members with respect to the subject matter of this Agreement. There are no agreements, understandings, restrictions, representations, or warranties between the Members other than those in this Agreement or referred to or provided for in this Agreement. No modification or amendment of any provision of this Agreement will be binding on any Member unless it is in writing and signed by all the Members.

**9.7. Attorney Fees.** In the event of any suit or action to enforce or interpret any provision of this Agreement (or that is based on this Agreement), the prevailing party is entitled

DR. BOTT LLC OPERATING AGREEMENT - 15

*d*    *RB*

EXHIBIT 1
Page 15 of 18

to recover, in addition to other costs, reasonable attorney fees in connection with the suit, action, or arbitration, and in any appeals. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party will be decided by the court or courts, including any appellate courts, in which the matter is tried, heard, or decided.

**9.8. Further Effect.** The parties agree to execute other documents reasonably necessary to further effect and evidence the terms of this Agreement, as long as the terms and provisions of the other documents are fully consistent with the terms of this Agreement.

**9.9. Severability.** If any term or provision of this Agreement is held to be void or unenforceable, that term or provision will be severed from this Agreement, the balance of the Agreement will survive, and the balance of this Agreement will be reasonably construed to carry out the intent of the parties as evidenced by the terms of this Agreement.

**9.10. Captions.** The captions used in this Agreement are for the convenience of the parties only and will not be interpreted to enlarge, contract, or alter the terms and provisions of this Agreement.

**9.11. Notices.** All notices required to be given by this Agreement will be in writing and will be effective when actually delivered or, if mailed, when deposited as certified mail, postage prepaid, directed to the addresses first shown above for each Member or to any other address that a Member may specify by notice given in conformance with these provisions to the other Members.

**9.12. Written Approval or Consent.** All approvals or consents required to be given by this Agreement will be in writing and will be effective when actually delivered or, if mailed, when deposited as certified mail, postage prepaid, directed to the addresses first shown above for each Member or to any other address that a Member may specify by notice given in conformance with these provisions to the other Members or by facsimile signed and sent to the last known facsimile number provided to the Company.

**9.13. Use of Name.** In the event that Roderich Bott ceases to be a Member and none of his family (spouse, ancestral or lineal descendants) is a Member of the Company, the Company has the option to enter into a royalty agreement with Roderich Bott or the appropriate representative or family member for a license to use the name, "Dr. Bott" in the company name after execution of a standard royalty agreement which terms include the payment of a 1 percent royalty on Company sales payable on a calendar quarter basis within 30 days after the end of such quarter. At the Company's option, such royalty agreement will also include terms allowing the Company to purchase the name on a first right of refusal basis in the event Roderich Bott chooses to sell the name, "Dr. Bott".

**IN WITNESS WHEREOF,** the parties to this Agreement execute this Operating Agreement as of the date and year first above written.

DR. BOTT LLC OPERATING AGREEMENT - 16

EXHIBIT 1
Page 16 of 18

Dr. Roderich Bott:

Eric W. Prentice:

DR. BOTT LLC OPERATING AGREEMENT - 17

EXHIBIT 1
Page 17 of 18

## EXHIBIT A

## VALUATION

The Members hereby agree that the valuation of the Company is 60 thousand dollars.

Dr. Roderich Bott:  _Roderich Bott_  _Nov 27th 1999_
                                          Date

Eric W. Prentice:  _(signature)_  _27 March 99_
                                          Date

DR. BOTT LLC OPERATING AGREEMENT - 18

EXHIBIT 1
Page 18 of 18

1

2

3                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

4                         FOR THE COUNTY OF MULTNOMAH

5  DR. BOTT LLC, an Oregon limited liability    )    Case No.: 1112-15996
   company,                                     )
6                                               )    **DEFENDANT DR. RODERICH**
                Plaintiff,                      )    **BOTT'S THIRD AMENDED ANSWER;**
7                                               )    **AFFIRMATIVE DEFENSES; and**
   ERIC W. PRENTICE,                            )    **COUNTERCLAIMS**
8                                               )    1.  Derivative Proceedings on Claims for
                Nominal Plaintiff,              )        Breach of Fiduciary Duty, Fraud,
9                                               )        Conversion, and Breach of Contract;
        vs.                                     )    2.  Non Derivative Proceedings on Claims
10                                              )        for Limited Liability Dissolution;
   DR. RODERICH BOTT,                           )        Winding Down; Expulsion of LLC
11                                              )        Member; and Permanent and
                Defendant.                      )        Temporary Injunction, and other
12                                              )        permanent and temporary equitable
                                                )        relief.
13                                              )
                                                )
14                                              )    [Amount of Counterclaims: $3,000,000.00]
                                                )    Amount in Controversy More Than $50,000
15                                              )        (Not Subject to Mandatory Arbitration)
                                                )
16  _____         )    Jury Trial Requested
                                                )
17  DR. RODERICH BOTT,                          )
                                                )
18              Defendant,                      )
                                                )
19      vs.                                     )
                                                )
20  ERIC W. PRENTICE;  DR. BOTT LLC, an         )
   Oregon limited liability company             )
21                                              )
                Plaintiffs.                     )
22                                              )
                                                )
23  _____         )

24   1 –   DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE
            DEFENSES; and COUNTERCLAIMS

25

Lawrence M. Vergun                           Katherine Heekin
THE VERGUN LAW FIRM                          THE HEEKIN LAW FIRM
7455 SW Bridgeport Rd, Ste 220               808 SW Third Avenue, Ste 540
Tigard, Oregon  97224                        Portland, Oregon 97204
Telephone (503) 746-7859                     Telephone (503) 222-5578

EXHIBIT 2
Page 1 of 7

25.

Under Section 4.3 of the Operating Agreement, if a "Member who is not an Operating Manager exercises any right or power vested in the Member as a manager of the company," then the "non-breaching" Members or the Company has the option of buying out the alleged "breaching" Member at 60% of the liquidation value of the Company in accordance with the Operating Agreement's liquidation formula. Because of this provision, and despite Defendant's majority interest in the company, if Defendant makes requests for information, makes suggestions, or expresses opinions about the company, such acts leave Defendant vulnerable to assertions made by Plaintiffs that: (a) Defendant is trying to act as a manager of the company; and (b) Defendant is entitled to only 60% of the liquidation value of the Company under the buy-out provisions of Section 4.3.

26.

Because of the extraordinary powers provided to Plaintiff Prentice under the Operating Agreement as described in paragraphs 22, 23, and 25 of this Counterclaim, Plaintiff Prentice owes a heightened level of those duties set forth in paragraph 24 of this Counterclaim to the LLC and to the other members of the LLC, over and beyond that level of duties that would otherwise exist in Plaintiff Prentice's capacity as an owner, manager, and tax matter member.

27.

At various times commencing in 1999 and continuing today, Plaintiff Prentice materially breached the duties set forth in paragraph 24 of this Counterclaim to the LLC by doing the following intentional acts, fraudulent acts, and/or acts of gross negligence:

10 – DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE DEFENSES; and COUNTERCLAIMS

Lawrence M. Vergun
THE VERGUN LAW FIRM
7455 SW Bridgeport Rd, Ste 220
Tigard, Oregon 97224
Telephone (503) 746-7859

Katherine Heekin
THE HEEKIN LAW FIRM
808 SW Third Avenue, Ste 540
Portland, Oregon 97204
Telephone (503) 222-5578

EXHIBIT 2
Page 2 of 7

a.   Converting, or otherwise taking or using, LLC funds for his own personal use and/or for the use of his family, which occurred on numerous occasions from 1999 until today, including (based on information and belief) the dates and in the amounts set forth in Exhibit "B" attached hereto and incorporated herein by reference;

b.   Wrongfully taking compensation in excess of the amount permitted under the terms of the Operating Agreement;

c.   Wrongfully using LLC funds to pay for benefits that he was not otherwise entitled to receive under the terms of the Operating Agreement, I.R.S. regulations, and applicable law;

d.   Wrongfully using LLC funds to pay for his personal tax liability, over and above amounts that he was otherwise entitled to receive under the terms of the Operating Agreement and applicable law;

e.   Entering, or causing to be entered, financial transactions and data into the books and records of the company that are false, inaccurate, and material misleading;

f.   Failing to enter financial transactions and data into the books and records of the company that, due to their absence, cause the books and records of the company to be materially false, inaccurate, and misleading;

g.   Failing to prepare and maintain the books and records of the company on the accrual basis using generally accepted accounting principles (GAAP), at all times;

11 – DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE DEFENSES; and COUNTERCLAIMS

Lawrence M. Vergun
THE VERGUN LAW FIRM
7455 SW Bridgeport Rd, Ste 220
Tigard, Oregon 97224
Telephone (503) 746-7859

Katherine Heekin
THE HEEKIN LAW FIRM
808 SW Third Avenue, Ste 540
Portland, Oregon 97204
Telephone (503) 222-5578

EXHIBIT 2
Page 3 of 7

h.     Failing to prepare and maintain the books and records of the company, using generally accepted accounting principles (GAAP) consistently applied, at all times;

i.     Overstating and issuing bonuses to himself that violate the terms in the Operating Agreement for calculating bonuses;

j.     Failing to accurately compute, report, and pay on behalf of himself and other Members, the proper amount of mandatory distributions as required by Section 6.10 of the Operating Agreement;

k.     Failing to accurately compute and report to the other Members, and to applicable tax authorities, the true value of Capital Accounts in accordance with federal income tax accounting principles set forth in Treasury Regulation §1.704-1(b)(2)(iv);

l.     Failing to accurately compute and report to the other Members, and to applicable tax authorities, the proper bonus amounts permitted by the terms in the Operating Agreement for calculating bonuses and applicable law;

m.     Filing, or causing to be filed, tax returns that are materially misstated;

n.     Failing to amend prior tax returns that are known by him, or should have been known by him, to be materially misstated;

o.     Actively discouraging other members of the LLC from contacting the IRS to take steps to correct errors discovered in their own personal income tax returns regarding income from Dr. Bott LLC;

12 –  DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE DEFENSES; and COUNTERCLAIMS

Lawrence M. Vergun
THE VERGUN LAW FIRM
7455 SW Bridgeport Rd, Ste 220
Tigard, Oregon  97224
Telephone (503) 746-7859

Katherine Heekin
THE HEEKIN LAW FIRM
808 SW Third Avenue, Ste 540
Portland, Oregon 97204
Telephone (503) 222-5578

EXHIBIT 2
Page 4 of 7

p.    Actively discouraging other members of the LLC from obtaining information to enable those other members to determine whether accurate tax and financial reporting is being made;

q.    Entering and reporting financial transactions and data in violation of generally accepted accounting principles (GAAP), in such a way as to intentionally "move" net income from one year to another year, all with the intent to maximize his bonus;

r.    Entering and reporting inaccurate and false financial transactions and in such a way as to hide other inaccurate and false financial transactions, and/or to eliminate personal liabilities previously owed by him to the LLC or to the other Member;

s.    Causing or permitting mandatory distributions in excess of capital accounts, thus creating taxable income, without instituting reasonable and proper tax reporting methods that would have prevented the reporting of such taxable income;

t.    Failing to hire, select, assign and supervise employees, agents, and professionals to ensure that tax and financial data and transactions are entered and reported accurately, particularly with full knowledge of the degree of risk that a reasonable Operating Manager would expect for a company historically generating over $24,750,000.00 in gross annual sales;.

u.    Failing to institute proper accounting and financial systems and practices, particularly with full knowledge of the degree of risk that a reasonable

13 – DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE DEFENSES; and COUNTERCLAIMS

Lawrence M. Vergun
THE VERGUN LAW FIRM
7455 SW Bridgeport Rd, Ste 220
Tigard, Oregon 97224
Telephone (503) 746-7859

Katherine Heekin
THE HEEKIN LAW FIRM
808 SW Third Avenue, Ste 540
Portland, Oregon 97204
Telephone (503) 222-5578

EXHIBIT 2
Page 5 of 7

1    Operating Manager would expect for a company historically generating over

2    $24,750,000.00 in gross annual sales;

3    v.    Failing to materially follow explicit provisions of the Operating Agreement,

4    including but not limited to the following: failing to first consult to obtain

5    approval of other Members concerning proposed audit adjustments; failing to

6    maintain accurate records and accounts of operations and expenditures; failing

7    to provide within the time period required accurate internally prepared financial

8    statements; failing to file accurate tax returns; failing to maintain accurate

9    records concerning capital accounts; failing to account for all funds as a

10    fiduciary (including but not limited to the funds which defendant is informed

11    and believes, and thereon alleges, occurred on the dates and in the amounts set

12    forth in Exhibit "B" incorporated herein by reference); failing to invest or

13    deposit funds in accounts or deposits that are insured or guaranteed by an

14    agency of the United States government (and in fact, placing substantial funds

15    in accounts that created unreasonable risk); failing to timely file all federal and

16    state income tax returns for the Company (causing unnecessary penalties and

17    interest); filing such income tax returns without review and approval of the

18    majority of all Members; failing to furnish all Members with materially accurate

19    internally prepared financial statements of the Company within 120 days after

20    the end of each fiscal year; and failing to furnish all Members with a statement

21    that may be used by each Member in the preparation of that Member's tax

22

23

24    14 –  DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE
DEFENSES; and COUNTERCLAIMS

25

Lawrence M. Vergun
THE VERGUN LAW FIRM
7455 SW Bridgeport Rd, Ste 220
Tigard, Oregon 97224
Telephone (503) 746-7859

Katherine Heekin
THE HEEKIN LAW FIRM
808 SW Third Avenue, Ste 540
Portland, Oregon 97204
Telephone (503) 222-5578

EXHIBIT 2
Page 6 of 7

1          returns (showing those items described in Section 6.4 of the Operating

2          Agreement) within 90 days after the end of each taxable year;

3    w.      Falsely reporting to the IRS in writing that all partners agreed to waive their

4          right to a Closing Conference of the Year 2006 IRS Audit, when Plaintiff

5          Prentice knew that such representation as required under IRC section 6224(a)

6          and Treasury Regulation section § 301.6224(a)-1(a) was not true;

7    x.      Failing to timely correct material errors in tax and financial records, when he

8          knew or should have known that such errors existed;

9    y.      Failing to timely repay to the LLC overpayments in monetary and non-monetary

10          compensation, when he knew or should have known that such overpayments

11          existed;

12    z.      Failing to pay tax withholdings and quarterly payments timely and properly; and

13    aa.    Failing to timely keep the Members informed of IRS notices and

14          communications to the LLC where such notices and communication may have

15          potential adverse tax consequence upon the individual Members, and would

16          reasonably be anticipated to require a prompt response on the part of the

17          individual Member to the IRS.

18                                 28.

19      The acts and omissions as alleged in the prior paragraph were actively and fraudulently

20 concealed by Plaintiff Prentice in violation of his fiduciary duty to disclose such matters to

21 Defendant. The fact that these acts and omissions were actively and fraudulently concealed by

22 Plaintiff Prentice made it impossible, unlikely, and/or unreasonably difficult for Defendant to

23

24    15 – DEFENDANT DR. RODERICH BOTT'S THIRD AMENDED ANSWER; AFFIRMATIVE
       DEFENSES; and COUNTERCLAIMS

25

Lawrence M. Vergun
THE VERGUN LAW FIRM
7455 SW Bridgeport Rd, Ste 220
Tigard, Oregon 97224
Telephone (503) 746-7859

Katherine Heekin
THE HEEKIN LAW FIRM
808 SW Third Avenue, Ste 540
Portland, Oregon 97204
Telephone (503) 222-5578

EXHIBIT 2
Page 7 of 7

1  Tara J. Schleicher, OSB #954021
   tschleicher@fwwlaw.com
2  Farleigh Wada Witt
   121 SW Morrison Street, Suite 600
3  Portland, Oregon 97204-3136
   Telephone: (503) 228-6044
4
         Attorneys for Dr. Roderich Bott
5

6

7

8               IN THE UNITED STATES BANKRUPTCY COURT

9                    FOR THE DISTRICT OF OREGON

10  In re                              |  Case No. 14-32565-tmb11

11  Dr. Bott, LLC,                     |

12                        Debtor.      |  DECLARATION OF KATHERINE R.
                                       |  HEEKIN IN SUPPORT OF MOTION FOR
13                                     |  RELIEF FROM STAY

14

15        I, Katherine R. Heekin, do hereby declare as follows:

16        1.      I am one of the attorneys for Dr. Roderich Bott ("Bott").  I make this

17  declaration based upon my own personal knowledge.

18        2.      On November 7, 2011, Bott's counsel sent a letter to counsel for Dr. Bott,

19  LLC (the "LLC"), at that time demanding that the LLC take action against Eric W. Prentice

20  ("Prentice") for breaches of his fiduciary duties as the operations manager and tax manager of

21  the LLC.  In response, Prentice hired a different attorney to represent the LLC and sued Bott to

22  force a buy-out of his interest in the LLC.  That lawsuit brought by the LLC and Prentice was

23  filed in Multnomah County Circuit Court for the State of Oregon as, *Dr. Bott, LLC et. al. v. Dr.*

24  *Roderich Bott,* Multnomah County Circuit Court Case No. 1112-15996 (the "Litigation").

25        3.      During depositions in the Litigation, Prentice admitted that he came up

26  with the complaint against Bott after Bott had accused him of violating his fiduciary duties.

Page 1 of 2 -   DECLARATION OF KATHERINE R. HEEKIN IN SUPPORT OF MOTION FOR
                RELIEF FROM STAY
                P:\DOCS\DRBOTT\07047\PLDG\3IM3645.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1           4.      Ultimately, based upon Bott's Motion to Disqualify filed in the Litigation,

2    the LLC's lawyers were disqualified from representing the LLC in the Litigation based upon a

3    breach of the lawyers' duties of loyalty to the LLC.  They were found to have breached their

4    duties of loyalty to the LLC because they entered into a joint interest agreement with Prentice as

5    an individual in pursuit of his defense of allegations against him personally.

6           5.      There is a pending motion for summary judgment and a motion for

7    preliminary injunction in the Litigation that would resolve control issues relating to the LLC.

8    The parties submitted a proposed briefing schedule and request for hearing dates for the motions,

9    and were awaiting a response from the court regarding a hearing date when the involuntary

10    action was filed.

11           I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE

12    BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE

13    FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

14           Dated: May 16, 2014.

15

16                    /s/ Katherin R. Heekin
                           Katherine R. Heekin, OSB #944802

17

18

19

20

21

22

23

24

25

26

    DECLARATION OF KATHERINE R. HEEKIN IN SUPPORT OF MOTION FOR
                  RELIEF FROM STAY
                  P:\DOCS\DRBOTT\07047\PLDG\3IM3645.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2014 I electronically filed the foregoing MOTION FOR RELIEF FROM STAY OF DR. RODERICH BOTT, DECLARATION OF DR. RODERICH BOTT IN SUPPORT OF MOTION FOR RELIEF FROM STAY, AND DECLARATION OF KATHERINE R. HEEKIN IN SUPPORT OF MOTION FOR RELIEF FROM STAY with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- CONDE T COX    ccox@lbblawyers.com, JQueener@lbblawyers.com
- JUSTIN D LEONARD    jleonard@ml-llp.com, ecf@ml-llp.com;jleonard@pacernotice.com
- US Trustee, Portland    USTPRegion18.PL.ECF@usdoj.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Dr. Bott LLC
c/o Garvey Schubert Barer
Attn: Gary I Grenley
121 SW Morrison St 11th Fl
Portland, OR 97204

Eric Prentice
9730 SW Hillman Ct #600
Wilsonville, OR 97070

Dated: May 16, 2014.

FARLEIGH WADA WITT

By: /s/ Tara J. Schleicher
Tara J. Schleicher, OSB #954021
(503) 228-6044
tschleicher@fwwlaw.com
Attorneys for Dr. Roderich Bott

Page  1 – CERTIFICATE OF SERVICE

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741